# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WISCONSIN
### MILWAUKEE DIVISION

VINCENT YEUNG

*On Behalf Of Himself And All*
*Others Similarly Situated*,

   Plaintiff,

  v.

A.O. SMITH CORPORATION,

   Defendant.

Case No.: _____

## CLASS ACTION COMPLAINT

Plaintiff Vincent Yeung, individually, and on behalf of all others similarly situated, by and through his counsel, brings this action against A.O. Smith Corporation ("A.O. Smith" or "Defendant"). Plaintiff's allegations herein are based upon personal knowledge and belief as to his own acts, upon the investigation of his counsel, and upon information and belief as to all other matters.

### INTRODUCTION

1. This action arises from Defendant's deceptive and misleading practices in connection with the design, manufacturing, marketing, and sale of A.O. Smith's residential tank-style water heaters (including those branded as State and Reliance).

2. A water heater is equipped with a drain valve at the base of the tank to allow the controlled removal of water from the unit for routine maintenance, emergency shut-downs, and end-of-life replacement. The valve's primary purpose is to permit periodic flushing of sediment that naturally accumulates inside the tank, which manufacturers—including A.O. Smith—identify as

necessary to maintain efficiency, prolong tank life, and prevent internal corrosion. To perform this function safely, the drain valve must reliably open and close, maintain a watertight seal under normal operating pressures, and withstand long-term exposure to hot, chlorinated water.

3. Despite the essential nature of the drain valve and the industry expectation that the valve's components be durable and leak-resistant, A.O. Smith equips many of its residential water heaters with plastic, glass-filled nylon drain valves instead of more durable brass valves.

4. A.O. Smith manufactures and sources these plastic valves through its APCOM parts division and markets them as "cost-effective" alternatives to brass valves, claiming they provide comparable performance. However, these plastic valves are materially inferior to brass valves and are not suitable for long-term exposure to hot, chlorinated water. Because of the material make-up of the plastic drain valve, the valves degrade, warp, crack, and lose their internal seal under normal operating conditions, leading to sudden failures and leaks (the "Defect"). For many consumers, the Defect manifests itself immediately after performing the routine flushing maintenance that A.O. Smith itself recommends—a clear indication that the valve cannot withstand the ordinary and intended use of the product.

5. Indeed, consumers across the country have reported that A.O. Smith's plastic drain valves leak, drip, or fail entirely after only minimal use. Owners describe situations in which simply opening the valve once—often to perform the recommended annual tank flush—results in a valve that can no longer close or seal. Others have reported spontaneous leaking without any prior interaction with the valve. These failures cause uncontrolled water discharge from the heater, resulting in flooded basements, damaged drywall, ruined flooring, mold growth, electrical hazards,

2

and costly repairs. Some owners have experienced multiple flooding events across multiple A.O. Smith units, demonstrating that the defect is both consistent and systemic.

6. On information and belief, A.O. Smith knowingly sold its residential water heaters equipped with the Defect, and which are prone to premature failure. Defendant knew that the plastic drain valves it uses in its residential water heaters were defective because those valves were failing at rates far exceeding what is expected within the water-heater industry and far above the failure rates associated with standard brass drain valves.

7. Defendant was also aware that the plastic drain valves in its water heaters were defective because it received, and continues to receive, numerous complaints from consumers, plumbers, and service technicians reporting that A.O. Smith water heaters contain cheaply manufactured plastic valves that leak, drip, or fail outright during ordinary and expected use, including during routine annual flushing.

8. Thus, Defendant knew, or reasonably should have known, that the plastic drain valves in its water heaters were defective, yet it failed or refused to inform consumers, issue a recall, redesign the valve using an industry-standard brass components, or provide purchasers with a non-defective replacement valve.

9. Instead, Defendant has falsely and deceptively represented in its marketing materials, product guides, and websites that its water heaters are durable, reliable, long-lasting, and manufactured to high quality standards while concealing the fact that many units are instead equipped with inexpensive, failure-prone plastic valves that do not perform as advertised.

10. Accordingly, Plaintiff, on behalf of himself and all others similarly situated, brings this action for violations of the California Consumer Legal Remedies Act, California Unfair

Competition Law, Magnuson–Moss Warranty Act, and for fraudulent concealment, breach of implied warranty, breach of express warranty, and unjust enrichment.

**THE PARTIES**

11. Plaintiff Vincent Yeung is a citizen of California who currently resides in Monrovia, California, and has resided there at all times pertinent to this Complaint.

12. Plaintiff purchased a Reliance 6–40–UNBRT 400 Water Heater in January 2020 for personal and household use. This model relied on a plastic drain valve to contain approximately 40 gallons of the unit's hot water.

13. Plaintiff's water heater bears the following serial number: 1950117460558.

14. Prior to purchase, Plaintiff visited Defendant's website and reviewed the website pages for the specific unit that Plaintiff purchased. The website did not disclose the defective nature of the water heater.

15. In July 2023, the plastic drain valve leaked and caused substantial water damage to the surrounding flooring, cabinetry, and drywall in Plaintiff's home.

16. Plaintiff contacted Defendant regarding the leak and Defendant sent a replacement plastic drain valve, for which Plaintiff was required to pay the shipping costs.

17. In early 2025, Plaintiff experienced another leak in the replacement plastic drain valve, as well as the tank. After contacting Defendant again regarding the leak, Defendant requested that Plaintiff pay the difference between the original purchase price and the current price of a replacement water heater, which Plaintiff did. Defendant also informed Plaintiff it would not provide Plaintiff with a warranty on the replacement water heater.

4

18. Between both leaks, Plaintiff incurred approximately $5,000 in out-of-pocket costs for the materials necessary to replace the water damaged items in his home, including the flooring and drywall. Plaintiff performed the necessary repairs and replacements himself.

19. Fed up with plastic drain valve failures, Plaintiff decided to replace his water heater by paying the difference in price between his old water heater and a new water heater, plus tax, after contacting A.O. Smith to complain. Plaintiff purchased a Reliance 6-40-UNBRT-500 water heater bearing serial number 2522143939898 from Ace Hardware. Plaintiff did not receive any warranty as part of his new purchase.

20. On or about January 16, 2026, Plaintiff sent a pre-suit demand letter to Defendant.

21. Plaintiff has suffered an ascertainable loss as a result of Defendant's omissions associated with the Defect, including, but not limited to, out of pocket loss associated with the Defect and diminished value of his water heater.

22. Neither Defendant, nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the Defect prior to purchase. Had Defendant disclosed the Defect to Plaintiff, he would not have purchased the water heater, or would have paid less for it.

23. Defendant A.O. Smith Corporation ("A.O. Smith") is a corporation organized and existing under the laws of the State of Delaware with a principal place of business at A.O. Smith Corporation, 11270 W. Park Place, Milwaukee, Wisconsin 53224.

24. Founded in 1874 and headquartered in Milwaukee, A.O. Smith is one of the largest water heater manufacturers in North America. In 2022, the company reported record sales of approximately $3.8 billion, reflecting its expansive market presence and strong penetration into both retail and wholesale distribution channels.

5

25.     A.O. Smith manufactures and sells water heaters under several brand names, including A.O. Smith, State, Reliance, and others. Its products are marketed nationwide through big-box retailers, plumbing supply distributors, and professional installers. A.O. Smith represents that its water heaters are built with "innovative technology," "high-quality components," and "energy-efficient solutions" designed to offer consumers long-lasting performance and reliability.

26.     Many of A.O. Smith's residential water heaters—including its popular retail "Signature" series—are equipped with plastic drain valves and other components manufactured by its parts division, APCOM Inc.[1] A.O. Smith maintains exclusive control over the design, materials, and specifications for these valves and represents to consumers that its heater components meet or exceed industry standards.

27.     A.O. Smith exerts substantial control over the engineering, design, marketing, labeling, warranties, and performance representations associated with its water heaters. Consumers reasonably rely on A.O. Smith's longstanding reputation as an industry leader and on its assurances of product quality, durability, and safety when deciding to purchase one of its water heating units.

28.     Despite these representations, A.O. Smith has equipped many of its residential water heaters with inexpensive, failure-prone plastic drain valves that are not suitable for long-term use under normal household water heater conditions, resulting in leaks, valve failures, and significant property damage to consumers.

<u>JURISDICTION AND VENUE</u>

29.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(d)(2), the Class Action Fairness Act of 2005 because: (i) there are 100 or more class members,

---

[1] *https://www.apcom.com/about-us* ("Since 2001, APCOM has been a part of the A. O. Smith Corporation family of companies.") (last visited March 11, 2026).

(ii) there is an aggregate amount in controversy exceeding $5,000,000, exclusive of interest and costs, and (iii) there is minimal diversity because at least one Plaintiff and Defendant are citizens of different States.

30. This Court has personal jurisdiction over the Defendant because it conducts substantial business in this District, maintains its corporate headquarters in this District, and intentionally and purposefully offers goods and services within this District. Furthermore, a substantial part of the acts and omissions complained of occurred in this District.

31. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391 because the Defendant received substantial revenue and profits from its sales of water heater units in this District, and Plaintiff's claims arose based on Defendant's conduct within this District. Therefore, a substantial part of the events or omissions giving rise to the claims occurred in this District.

## TOLLING OF STATUTE OF LIMITATIONS

32. Any applicable statute(s) of limitations has been tolled by Defendant's knowing and active concealment and denial of the facts alleged herein. Plaintiff and members of the Class could not have reasonably discovered the true, latent nature of the defect until shortly before this class action litigation was commenced.

33. Defendant is and remains under a continuing duty to disclose to Plaintiff and members of the Class the true character, quality, and nature of the water heater units. As a result of the active concealment by Defendant, any and all applicable statutes of limitations otherwise applicable to the allegations herein have been tolled.

7

## WISCONSIN LAW APPLIES TO THE NATIONWIDE CLASS

34. It is appropriate to apply Wisconsin law to the nationwide claims because Wisconsin's interest in this litigation exceeds that of any other state.

35. Defendant is headquartered in Milwaukee, Wisconsin, and is the sole entity responsible for distributing, selling, marketing, and warranting the water heaters at issue.

36. Upon information and belief, the relevant design and manufacturing decisions related to the inclusion of plastic drain valves in Defendant's water heaters were made from its Wisconsin headquarters.

37. Upon information and belief, Defendant's engineering department in Wisconsin is responsible for the decisions to conceal the Defect from its customers, and for neglecting to inform its customers of the Defect.

38. Based on the foregoing, the policies, practices, acts, marketing, and omissions giving rise to this action were developed in, and emanated from, Defendant's headquarters in Milwaukee, Wisconsin. As detailed below, Defendant came to know, or should have come to know, of the Defect through the activities of its divisions located within Wisconsin. Further, Defendant's warranty policies and decisions related to the Defect emanated from its Wisconsin headquarters. Accordingly, the State of Wisconsin has the most significant relationship to this litigation and its law should govern.

## FACTUAL ALLEGATIONS

### Background on Water Heaters

39. Residential tank water heaters are one of the most common household appliances in the United States, installed in tens of millions of homes. A tank water heater's primary purpose is

8

to heat and store a supply of water, typically 30 to 80 gallons, so that hot water is readily available throughout the home for bathing, cleaning, cooking, and other household needs.

40. A conventional tank water heater consists of a large steel cylinder that continuously heats water and keeps it at a set temperature using either electricity or natural gas. Cold water enters the tank through an inlet tube, where it is heated by internal heating elements (in electric models) or a gas burner and flue system (in gas models). Once heated, the hot water naturally rises to the top of the tank and is delivered through the home's plumbing system whenever a faucet or appliance calls for hot water.



41. Because a tank water heater contains a substantial volume of heated water under pressure, it is equipped with numerous safety and maintenance components designed to allow the unit to function properly and safely over many years. These components typically include: (1) an anode rod to mitigate corrosion inside the tank; (2) a temperature and pressure relief valve to prevent dangerous over–pressurization; and (3) a drain valve located at the bottom of the tank to allow the

9

user or a technician to empty or flush the system. Below depicts a brass style drain valve that would be located at the bottom of a water heater.



42.     Routine maintenance is necessary for safe and efficient operation of a water heater. Over time, minerals and sediment naturally accumulate at the bottom of the tank. A.O. Smith instructs homeowners to periodically drain or flush the tank through the drain valve to remove this sediment, prevent internal corrosion, maintain heating efficiency, and extend the heater's life.[2] To perform this function safely, the drain valve must reliably open and close, maintain a watertight seal under normal operating pressures, and withstand long-term exposure to hot, chlorinated water. Without a functional drain valve, the homeowner or plumber cannot perform this basic maintenance and the tank cannot be safely emptied in the event of repair, replacement, or emergency shut-down.

43.     Tank water heaters are expected to operate reliably for eight to twelve years or more. Because the appliance typically sits in a basement, utility room, garage, or closet, and often out of daily view, consumers reasonably rely on the manufacturer to use safe, durable components that will

---

[2] *https://www.hotwater.com/info-center/how-to-drain-a-water-heater.html* (last visited March 11, 2026).

not fail without warning. A malfunction in any of the heater's safety or water–containment components can lead to significant flooding, water damage, electrical hazards, and costly repairs.

44.     A water heater is a critical household appliance containing a large volume of pressurized hot water. The safe and reliable operation of a water heater depends on the proper design and durability of its internal components, including the integrity of the drain valve.

### *A.O. Smith Water Heaters and the Drain Valve Defect*

45.     Despite the importance of the drain valve, A.O. Smith equips many of its residential water heaters with inexpensive plastic, glass–filled nylon drain valves that are prone to failure.  These valves malfunction by dripping, leaking, or failing outright when subjected to normal household water pressure and temperature. Instead of industry–standard brass valves, the plastic valves used by Defendant degrade, crack, warp, and lose their seal under normal use, particularly during routine flushing that A.O. Smith itself recommends. The picture below is a plastic drain valve, manufactured by APCOM, and contained on the water heaters at issue in this case.





46.     The drain valve assembly uses an ethylene–propylene–diene terpolymer ("EPDM") rubber as the primary internal elastomeric sealing material, which is housed and actuated by a glass–fiber–reinforced nylon valve stem and valve body. This design is intended to ensure that the valve remains watertight under constant exposure to elevated temperatures, pressure, and treated water chemistry throughout the expected service life of the water heater.



47.     As detailed herein, each water heater incorporates an internal rubber sealing component and plastic stem that, by virtue of their design and/or chemical composition, are inherently susceptible to degradation when exposed to chlorine and/or chloramine commonly

12

present in municipal water supplies. Even when the drain valve remains in the closed position, the elevated water temperatures inherent to normal water heater operation accelerate this degradation, causing the elastomeric sealing material to weaken and the plastic stem to embrittle, fracture, and disintegrate. This degradation destroys the valve's watertight seal and leads to failure. These material limitations and the resulting failure mechanism are not known to, and are not reasonably discoverable by, ordinary consumers or homeowners.





Case 2:26-cv-00422-JPS    Filed 03/16/26    Page 13 of 38    Document 1

48. The defective drain valves installed in A.O. Smith water heaters are manufactured from glass-filled nylon containing fiberglass, rather than from brass which is the durable, industry-standard material traditionally used in residential water heater drain valves.

49. Glass-filled nylon is significantly less resistant to heat, pressure, and long-term exposure to hot, chlorinated water than brass. Unlike brass, which maintains its dimensional stability and sealing performance throughout the life of a water heater, glass-filled nylon is susceptible to chemical degradation, thermal distortion, and embrittlement under normal operating conditions.

50. As the glass-filled nylon material degrades inside the water heater environment, the valve body becomes prone to warping, cracking, and loss of structural integrity. These changes impair the valve's ability to form and maintain a watertight seal, especially after the valve is opened for routine tank flushing as recommended by A.O. Smith.

51. Once the valve begins to distort or degrade, the internal sealing components—also made of plastic and elastomeric materials—lose compression and fail to seat properly. This causes water to seep or drip through the valve even when it is in the closed position.

52. As material degradation progresses, the valve can no longer withstand ordinary thermal cycling or household water pressure. This often results in a sudden or complete failure of the valve, causing water to escape uncontrollably from the tank and damage the surrounding areas.

53. Specifically, the water heater drain valves incorporate an ethylene-propylene-diene terpolymer ("EPDM") rubber for the internal elastomeric seal and a glass-fiber-reinforced nylon resin for the internal valve stem and valve body. The particular formulations of these polymeric materials used in manufacturing the valve components provide inadequate antioxidant protection

14

and exhibit poor resistance to oxidative degradation. As a result of these material deficiencies, the internal components are prone to premature degradation, which compromises the integrity of the valve assembly and leads to sudden and catastrophic leakage.

54. These failures are not the result of misuse, improper installation, or abnormal operating conditions. Rather, they arise from A.O. Smith's decision to manufacture and install drain valves made of inexpensive glass-filled nylon instead of brass, a material known to withstand the high-temperature, high-pressure, corrosive environment inside a water heater.

55. The root cause of the defect is A.O. Smith's use of plastic drain valves that are materially unfit for their intended purpose. The foreseeable degradation and deformation of glass-filled nylon under normal water-heater conditions renders the valve incapable of performing its essential safety and maintenance function.

56. Had A.O. Smith used a brass drain valve, the valve would not have suffered the same defect and would have been far more durable, resistant to corrosion and thermal distortion, and capable of maintaining a reliable seal throughout the life of the unit.

57. Instead, the use of glass-filled nylon valves creates a known, predictable point of failure that causes leaks, flooding, property damage, and loss of function of the water heating system as a whole. These failures have resulted in extensive property damage, mold growth, electrical hazards, and costly remediation efforts borne by consumers.

### *Chlorine and Chloride Interaction with the Plastic Drain Valves*

58. Chlorine and chloramine—commonly used disinfectants in municipal potable water supplies—cause degradation of the polymeric and elastomeric materials used in A.O. Smith's plastic drain valves, including the internal elastomeric sealing components and the glass-filled nylon

15

material used for the valve body and internal stem. The foreseeable exposure of the plastic drain valves to chlorine and chloramine contained within water causes these materials to harden, embrittle, warp, and lose mechanical integrity over time. Chloramine is particularly aggressive and has been shown to accelerate degradation of polymer and rubber components beyond that caused by conventional chlorine.

59. Glass-filled nylon and elastomeric sealing materials are especially susceptible to oxidative and chemical degradation in chlorinated hot-water environments. While certain elastomers may offer limited resistance to environmental stressors, prolonged exposure to elevated temperatures, chemical disinfectants, and continuous thermal cycling significantly accelerates material breakdown unless specialized formulations, additives, or processing methods are employed.

60. It is well known in the plumbing and materials-engineering industries that many polymer and elastomer formulations degrade prematurely when exposed to municipal water systems, particularly at elevated temperatures. Increased water temperature accelerates chemical attack, resulting in a rapid loss of mechanical properties, including strength, flexibility, and sealing capability. This degradation process leads to cracking, deformation, and seal failure.

61. The environment in which A.O. Smith's drain valves operate—continuous exposure to hot, pressurized potable water treated with chlorine or chloramine—is foreseeable and intended. The drain valve is installed at the outlet of the water heater and is directly exposed to the harshest internal conditions of the appliance.

62. Given the expected service life of residential water heaters—typically eight to twelve years or more—the specific materials selected by A.O. Smith for the drain valve, including glass-filled nylon and elastomeric sealing components, are materially deficient and unsuitable for their intended

16

purpose. The foreseeable chemical and thermal degradation of these materials renders the drain valve incapable of maintaining a watertight seal throughout the expected life of the product.

*A.O. Smith's Knowledge of the Defect*

63. Defendant knew the plastic drain valves used in its residential water heaters were defective because those valves were failing at rates far exceeding what is expected in the water-heater industry and far above the failure rates associated with brass drain valves.

64. Defendant was also aware that the plastic drain valves in its water heaters were defective because it received – and continues to receive – numerous complaints from consumers, plumbers, and service technicians reporting that these plastic drain valves leak, cannot be fully closed after being opened, or spontaneously fail, causing flooding and property damage.

65. Thus, Defendant knew, or reasonably should have known, that the plastic drain valves in its water heaters were defective, yet it failed or refused to inform consumers, issue a recall, redesign the valve to use a non-defective brass component, or provide purchasers with an adequate replacement valve.

66. Instead, Defendant has falsely and deceptively represented in its marketing materials, product guides, and websites that its water heaters are reliable, durable, and manufactured to high quality standards.

67. The uniform use of defective plastic drain valves across A.O. Smith's residential water heaters constitutes a design defect. The premature failure of these valves is foreseeable, given the valves' material composition, the intended high-temperature environment, and the routine maintenance requirements expressly recommended by A.O. Smith.

17

68.     Plastic drain valves are inherently less durable than brass valves when exposed to hot, chlorinated water. A.O. Smith knew or should have known that glass–filled nylon is prone to chemical degradation, warping, and seal failure under the conditions naturally present inside a water heater.

69.     Consumers reasonably expect water heaters to include durable, reliable components capable of lasting the unit's expected service life, typically 8-12 years or more. Consumers also reasonably expect they will be able to perform routine maintenance (such as flushing the tank) without causing the drain valve to fail.

70.     Consumers did not receive the benefit of their bargain. A water heater equipped with a defective plastic drain valve is worth substantially less than what consumers paid and exposes them to foreseeable flooding, water damage, safety risks, and substantial out–of–pocket expenses.

71.     A.O. Smith has continued to market, sell, and distribute water heaters equipped with defective plastic drain valves despite having knowledge of this widespread defect and the dangers it poses to consumers and their property.

*Consumer Complaints*

72.     Defendant is also on notice of the Defect contained within its Water Heaters by consumer complaints. Indeed, the internet is replete with examples of blogs and other websites where Class Members have complained of the exact same Defect in their Water Heaters. A sampling of those complaints is included below:

- **February 11, 2022:** "This is the most cheaply produced hot water heater I have ever had. The first was defective just over 100 days since installation. The customer service is hideous. Everything from the hold music to being told to get a call back if you push #1 on the phone. We called using 3 phones and 2 were kept on hold for over an hour. The third phone we called and were called back while the other two were still on hold in about 35 minutes. Three different times they sent parts and none of them fixed the

18

problem. We were then told to return the product to Lowes and get another. Out of the box it was defective with the cheap plastic drain at the.bottom being broken. We called and were told to take it back. We had the plumber remove it and put in a quality brass drain at the bottom that will not clog rather than the cheap junk AO Smith uses to cut ever corner to make it as cheap as possible. Further, you talk cheap, this is AO Smith. It is no wonder they can't get people to come service their products because they refuse to pay a decent wage to the repair person. This will be the LAST AO Smith hot water heater we ever buy for ANY of our properties! I would NEVER recommend AO Smith to ANYONE!"[3]

- **June 2, 2025:** "The drain valve on my AO Smith water heater is made of plastic. The manual of the water heater says that the user should flush the tank once per year. I opened the valve to flush it three weeks ago, but the valve failed. I cannot close the valve anymore. I have nine year parts warranty. I called the manufacturer. They agreed to give me a new valve, but the new valve is still plastic. I would like to upgrade the valve to a metal one. I need to call a plumber to do the job."[4]

- **September 20, 2024:** "I have a Rheem tankless electric water heater I bought 3 years ago... Runs flawlessly. I bought a AO Smith 2 months ago for my daughter's tiny house. What a piece of crap. Doesn't work tech that came out gives the runaround. Just look at the insides of both units and you realize fast that AO Smith is a rip-off. Rheem's parts are copper metal. AO Smith's are plastic cheaply made. and AO Smith costs more. Can't take it back to Lowe's because I got rid of the box. Can't get AO Smith to repair because they make junk and their techs are not good at their job. The whole company is just a scam in my opinion!"[5]

- **June 26, 2024:** Reddit thread titled "F*** you AoSmith and your plastic drain valves."[6]

- "I have AO Smith electric water heater model# E6-50R45DV 110. Serial# 2404137538421. My annual tank draining maintenance is coming due. This water heater is 1 year old now. I want to get rid of that crappy plastic drain valve the manufacturer installs. I already have a brass ball port valve I can reuse from the previous tank. I can almost guarantee that plastic valve will break off in the hole when I try to remove it. This happened to me before. What is the best way to remove the broken pieces when the time comes? Thread tap? I believe the drain valve threaded hole is 1 inch diameter. How do you guys remove the remaining plastic drain valve pieces on these?"[7]

---

[3] *https://www.trustpilot.com/review/aosmith.com?page=5* (last visited March 11, 2026).

[4] *https://www.consumeraffairs.com/homeowners/ao_smith.html?page=2#scroll_to_reviews=true* (last visited March 11, 2026).

[5] *https://www.consumeraffairs.com/homeowners/ao_smith.html?page=3#scroll_to_reviews=true* (last visited March 11, 2026).

[6] *https://www.reddit.com/r/Plumbing/comments/1dpbev2/fuck_you_aosmith_and_your_plastic_drain_valves/* (last visited March 11, 2026).

[7] *https://www.plbg.com/forum/read.php?1,702877,702937* (last visited March 11, 2026).

73. Defendant provides a warranty of 6, 8 or 10 years for its residential water heaters.[8] The warranty applies to the original purchaser of the residential water heater and restricted to use in a single-family residence in the United States.

74. The warranty states that "If any component part other than the inner tank proves to Manufacturer's satisfaction to be defective in material or workmanship within the warranty period listed above, the Manufacturer will furnish the Owner with a replacement for the defective part(s)."

75. In response to a warranty claim involving the Defect, A.O. Smith provides consumers with the same defective plastic drain valve, which inevitably leaks again and causes more water damage and costs its customers even more in out-of-pocket expenses to remediate the damage caused by the Defect.

## CLASS ALLEGATIONS

76. Plaintiff brings this action, individually, and on behalf of a class of similarly situated consumers, pursuant to Fed. R. Civ. P. 23(a), 23(b)(2), and/or 23(b)(3), defined as follows:

**Nationwide Class.** All persons in the United States who purchased a residential tank-style water heater manufactured or sold by A.O. Smith, including those branded as State or Reliance, that contained a plastic drain valve.

77. In the alternative to the Nationwide Class, Plaintiff seeks to represent the following state classes.

**California Class**. All persons in California who purchased a residential tank-style water heater manufactured or sold by A.O. Smith, including those branded as State or Reliance, that contained a plastic drain valve primarily for personal, family, or household purposes.

(together with the Nationwide Class, identified herein as "the Class" or the "Classes"). Excluded

---

[8] *https://assets.hotwater.com/damroot/Original/10001/100293072.pdf* (last visited March 11, 2026).

from the Class are: (a) Defendant; (b) Defendant's affiliates, agents, employees, officers and directors; and (c) the judge assigned to this matter, the judge's staff, and any member of the judge's immediate family. Plaintiff reserves the right to modify, change, or expand the various class definitions set forth above based on discovery and further investigation.

78. **Numerosity**: Upon information and belief, the Class is so numerous that joinder of all members is impracticable. While the exact number and identity of individual members of the Class are unknown at this time, such information is in the sole possession of Defendant and obtainable by Plaintiff only through the discovery process. Plaintiff believes, and on that basis alleges, that the Class consists of several thousand similarly situated consumers. The number and identity of Class members can be determined based on Defendant's records.

79. **Commonality**: Common questions of law and fact exist as to all members of each Class. These questions predominate over questions affecting individual Class members. These common legal and factual questions include, but are not limited to:

    a. Whether the A.O. Smith water heaters are defective;

    b. Whether Defendant knowingly failed to disclose the existence of the defect;

    c. When Defendant first learned that the water heaters were defective;

    d. Whether Defendant violated its warranty;

    e. Whether Defendant knowingly misled Plaintiff and the Class; and

    f. Whether Defendant was unjustly enriched by selling defective water heaters that did not function as represented; and

    g. Whether the Class is entitled to damages or other relief.

80. **Typicality**: Plaintiff has the same interest in this matter as all Class members, and Plaintiff's claims arise out of the same set of facts and conduct as the claims of all Class members. Plaintiff's and the Class members' claims all arise out of Defendant's uniform conduct and

21

statements.

81.     **Adequacy**: Plaintiff has no interests that conflict with the interests of the Class, and is committed to pursuing this action vigorously. Plaintiff has retained counsel competent and experienced in complex consumer class action litigation. Accordingly, Plaintiff and his counsel will fairly and adequately protect the interests of the Class.

82.     **Superiority**: A class action is superior to all other available means of fair and efficient adjudication of the claims of Plaintiff and the Class members. The injury suffered by each individual Class member is relatively small compared to the burden and expense of individual prosecution of the complex and extensive litigation necessitated by Defendant's conduct. It would be virtually impossible for Class members individually to effectively redress the wrongs done to them. Even if the members of the Class could afford such individual litigation, the court system could not. Individualized litigation increases the delay and expense to all parties, and to the court system, presented by the complex legal and factual issues of this case. Individualized rulings and judgments could result in inconsistent relief for similarly situated individuals. By contrast, the class action device presents far fewer management difficulties, and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

## CAUSES OF ACTION

### COUNT I: VIOLATIONS OF THE CALIFORNIA CONSUMER LEGAL REMEDIES ACT
### (On Behalf of Plaintiff Yeung and the California Class)

83.     Plaintiff incorporates by reference each of the allegations contained in the foregoing paragraphs of this Complaint.

84.     Plaintiff Yeung ("Plaintiff" for purposes of this count) and the members of the California Class are "consumers" as defined under the CLRA. Cal. Civ. Code § 1761.

22

85. Defendant is a "person" as defined under the CLRA. Cal. Civ. Code § 1761.

86. The Water Heaters are "goods" as defined under the CLRA. Cal. Civ. Code § 1761.

87. The CLRA proscribes "unfair methods of competition and unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or which results in the sale or lease of goods or services to any consumer." Cal. Civ. Code § 1770(a).

88. Defendant engaged in unfair and deceptive acts in violation of the CLRA by the practices described above and by knowingly and intentionally concealing from Plaintiff and the California Class members that the Water Heaters suffer from the Defect (and the costs, risks, and diminished value of the Water Heaters as a result of this Defect). Defendant's conduct violated at least the following enumerated CLRA provisions:

   a. Defendant represented that the Water Heaters have characteristics, uses, or benefits that they do not have, which is in violation of section 1770(a)(5);

   b. Defendant represented that the Water Heaters are of a particular standard, quality, or grade when, in fact, they are not, which is in violation of section 1770(a)(7);

   c. Defendant advertises its Water Heaters with the intent not to sell them as advertised, which is in violation of section 1770(a)(9);

   d. Defendant represented that its Water Heaters have been supplied in accordance with a previous representation when they have not, which is in violation of section 1770(a)(16); and

   e. Defendant inserted an unconscionable provision into its warranty in violation of section 1770(a)(19).

89. Defendant's unfair or deceptive acts or practices occurred repeatedly in its trade or business and were capable of deceiving a substantial portion of the purchasing public.

90. Defendant knew, should have known, or was reckless in not knowing that the Water Heaters were defective, would fail prematurely, and were not suitable for their intended use.

23

a. Defendant was under a duty to Plaintiff and the California Class members to disclose the defective nature of the Water Heaters and the Defect because: Defendant knew of but actively concealed the Defect from Plaintiff and the California Class;

b. Defendant was in a superior and exclusive position to know the true facts about the Defect, which affects the central functionality of the Water Heaters, and Plaintiff and the California Class members could not reasonably have been expected to discover that the Water Heaters contained the Defect until it manifested, which Defendant knew; and

c. Defendant made partial representations regarding the reliability and quality of the Water Heaters but suppressed material facts regarding the Defect.

91. The facts that Defendant misrepresented to and concealed from Plaintiff and the other California Class members are material because a reasonable consumer would have considered them to be important in deciding whether to purchase their Water Heaters or pay a lesser price for them.

92. The Defect affects the central functionality of the Water Heaters because it causes the Water Heaters to leak water.

93. In failing to disclose the material Defect, Defendant has knowingly and intentionally concealed material facts in breach of its duty to disclose.

94. Plaintiff and the California Class have suffered injury in fact and actual damages resulting from Defendant's material omissions, including by paying an inflated purchase price for their Water Heaters and incurring additional out-of-pocket expenses to deal with the Defect. Had Plaintiff and the California Class known about the defective nature of the Water Heaters and the Defect, they would not have purchased their Water Heaters or would have paid less for them.

95. As a direct and proximate result of Defendant's unfair and deceptive conduct, Plaintiff and the California Class members have been harmed.

24

96. Pursuant to Cal. Civ. Code § 1782(a), Plaintiff sent a letter to Defendant on January 16, 2026 notifying it of its CLRA violations and providing it with an opportunity to correct its business practices. If Defendant does not correct its business practices, Plaintiff will amend (or seek leave to amend) the complaint to add claims for monetary relief, including for actual, restitutionary, and punitive damages under the CLRA.

97. Additionally, pursuant to Cal. Civ. Code §§ 1780 and 1781, Plaintiff, individually and on behalf of the California Class, seeks compensatory and punitive damages under the CLRA and to recover their attorneys' fees and costs.

98. Plaintiff Yeung's CLRA venue declaration is attached as an exhibit to this complaint in accordance with Cal. Civ. Code § 1780(d).

### COUNT II: VIOLATIONS OF THE CALIFORNIA UNFAIR COMPETITION LAW
**(On Behalf of Plaintiff Yeung and the California Class)**

99. Plaintiff incorporates by reference each of the allegations contained in the foregoing paragraphs of this Complaint.

100. Plaintiff Yeung ("Plaintiff" for purposes of this count) brings this claim on behalf of the California Class against Defendant.

101. The UCL proscribes acts of unfair competition, including "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising." Cal. Bus. & Prof. Code § 17200. Defendant's conduct violates each of these prohibitions.

### Unlawful Conduct

102. Defendant's conduct is unlawful, in violation of the UCL, because, as set forth herein, it violates the Song–Beverly Consumer Warranty Act and the CLRA.

25

103. Defendant's conduct is unfair because it violated California public policy, legislatively declared in the Song–Beverly Consumer Warranty Act, which requires a manufacturer to ensure that goods it places on the market are fit for their ordinary and intended purposes.

104. Defendant acted in an immoral, unethical, oppressive, and unscrupulous manner, in at least the following respects:

   a. Selling Plaintiff and California Class members defective Water Heaters;

   b. Failing to disclose the Defect despite the opportunity to do so in numerous locations that consumers in the market for a water heater would be likely to encounter;

   c. Directing and furnishing replacement parts it knew would not adequately remedy the defect, and repairing defective parts with more defective parts and otherwise failing to adequately remedy the Defect during the warranty period;

   d. Refusing to repair or replace the Water Heaters when the known Defect manifested outside the warranty period;

   e. Failing to exercise adequate quality control and due diligence over the Water Heaters before placing them on the market; and

   f. Failing to acknowledge the scope and severity of the Defect, refusing to acknowledge the Water Heaters are defective, and failing to provide adequate relief to Plaintiff and California Class members.

105. The gravity of the harm resulting from Defendant's unfair conduct outweighs any potential utility of the conduct. The practice of selling defective Water Heaters without providing an adequate remedy to cure the Defect harms the public at large and is part of a common and uniform course of wrongful conduct.

106. There are reasonably available alternatives that would further Defendant's business interests of increasing sales and preventing false warranty claims. For example, Defendant could

26

have: (a) acknowledged the Defect and provided a permanent, effective fix for the Defect; and/or (b) disclosed the Defect prior to prospective consumers' purchases.

107. The harm from Defendant's unfair conduct was not reasonably avoidable by consumers. The Water Heaters all suffer from the Defect, and Defendant has failed to disclose it. Plaintiff and California Class members did not know of, and had no reasonable means of discovering, the Defect.

<b><u>Fraudulent Conduct</u></b>

108. Defendant's conduct is fraudulent in violation of the UCL. Defendant's fraudulent acts include knowingly and intentionally concealing from Plaintiff and the California Class members the existence of the Defect and falsely marketing the Water Heaters as being functional and not possessing a defect that would render them unusable for their central purpose.

109. Defendant's omissions alleged herein caused Plaintiff and the California Class members to purchase their Water Heaters or pay more than they would have had Defendant disclosed the Defect.

110. At all relevant times, Defendant had a duty to disclose the Defect because it had superior and exclusive knowledge of the Defect, which affects the central functionality of the Water Heaters, and because Defendant made partial representations about the reliability and quality of the Water Heaters but failed to fully disclose the Defect.

111. Accordingly, Plaintiff and California Class members have suffered injury in fact, including lost money or property, as a result of Defendant's unlawful, unfair, and fraudulent acts. Absent these acts, Plaintiff and California Class members would not have purchased their Water Heaters at the prices they paid or would not have purchased them at all.

27

112. Plaintiff seeks appropriate relief under the UCL, including such orders as may be necessary: (a) to enjoin Defendant from continuing its unlawful, unfair, and fraudulent acts or practices, and (b) to restore Plaintiff and California Class members any money Defendant acquired by its unfair competition, including restitution. Plaintiff also seeks reasonable attorneys' fees and expenses under applicable law.

### COUNT III: FRAUDULENT CONCEALMENT
### (On Behalf of Plaintiff and each of the Classes)

113. Plaintiff incorporates by reference each of the allegations contained in the foregoing paragraphs of this Complaint.

114. Defendant fraudulently concealed the Defect in its Water Heaters.

115. Defendant knew the plastic drain valves installed in its residential water heaters were defective because, among other things, it received numerous complaints reporting that the drain valves leaked, failed to close, or failed during ordinary use. Defendant had a duty to disclose any defect in its Water Heaters that posed a risk of premature failure, flooding, or property damage.

116. Defendant's testing and field data revealed or should have revealed that the plastic, glass-filled nylon drain valves were unfit for long-term exposure to hot, chlorinated water and would fail under normal operating conditions. Defendant therefore knew that Plaintiff and the Class would suffer foreseeable harm.

117. Defendant nevertheless concealed the existence and risks of the defective plastic drain valves. Defendant falsely represented, directly and indirectly, that its residential water heaters were manufactured with high-quality, durable components, while knowingly installing inexpensive, failure-prone plastic valves instead.

28

118. When consumers' water heaters leaked or failed, Defendant routinely blamed homeowners or installers and denied warranty coverage. Defendant never disclosed that the true cause of the leaking was the foreseeable degradation and failure of the plastic drain valve it selected and installed in the units.

119. The defect Defendant concealed was material. Plaintiff and the Class would not have purchased the water heaters—or would have paid significantly less—had they known that the units were equipped with plastic drain valves that could not withstand normal water heater conditions and posed a substantial risk of leaking, flooding, and premature failure.

120. Plaintiff and the Class were not on actual or constructive notice of the defect, in part because Defendant repeatedly represented that its water heaters were built with durable, high-quality components and denied that valve failures were caused by any design or materials defect. Defendant's misleading statements caused reasonable consumers to believe that any leaks or flooding were not attributable to a manufacturing defect.

121. Defendant's fraudulent concealment of the defective plastic drain valves directly caused Plaintiff's injuries. Plaintiff and the Class suffered damages in the form of water damage mitigation costs, property damage, plumbing expenses, replacement parts, loss of use, and the diminished value of their water heaters.

122. Plaintiff and the Class therefore seek all remedies available to them for Defendant's fraudulent concealment, including compensatory, consequential, and equitable relief.

### COUNT IV: BREACH OF THE IMPLIED WARRANTY OF MERCHANTABILITY
**(On Behalf of Plaintiff and the California Class)**

123. Plaintiff incorporates by reference each of the allegations contained in the foregoing paragraphs of this Complaint.

29

124. Defendant's water heaters, and the components contained within them, including the drain valves, are subject to an implied warranty of merchantability as defined in U.C.C. § 2-314.

125. "A warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind." U.C.C. § 2-314(1).

126. To be "merchantable," goods must, among other requirements, "be of fair average quality within the description," be "fit for the ordinary purposes for which such goods are used," "run, within the variations permitted by the agreement, of any kind, quality, and quantity within each unit and among all units involved," and "conform to the promises or affirmations of fact made on the container or label if any." U.C.C. § 2-314(2)(a), (b), (d), (f).

127. As described herein, Defendant's water heaters—including the plastic, glass-filled nylon drain valves installed in the units—were not of average quality, were not fit for their ordinary purpose, were not within permissible variations of quality, and did not conform to Defendant's representations regarding their durability and reliability.

128. Defendant represented that its water heaters and their components were of high quality, reliable, durable, and suitable for long-term residential use. A water heater's drain valve is essential to the safe and proper functioning of the appliance because it must maintain a watertight seal, withstand exposure to hot, pressurized water, and permit routine maintenance such as flushing sediment from the tank.

129. Defendant's drain valves, however, contain a defect that causes them to degrade, warp, crack, and lose their ability to seal under normal operating conditions. As a result, the water heaters prematurely leak or fail, often causing flooding, property damage, and loss of hot water.

30

130.   Plaintiff and the Class have found that the only "solution" to the defective drain valves is to replace them—often after water damage has already occurred—with similarly defective plastic valves or, in many cases, to replace the entire water heater prematurely.

131.   Defendant's water heaters and the drain valves contained within them therefore do not perform the essential functions they were represented to perform and that a water heater and its drain valve are intended and required to perform.

132.   Defendant's breach of the implied warranties of merchantability injured Plaintiff and the Class in an amount to be determined at trial.

## COUNT V: BREACH OF EXPRESS WARRANTY
### (On Behalf of Plaintiff and the California Class)

133.   Plaintiff incorporates by reference each of the allegations contained in the foregoing paragraphs of this Complaint.

134.   Defendant provided Plaintiff and the Class with express warranties for its residential water heaters whereby Defendant agreed to furnish a replacement for any part found to be defective in material or workmanship under normal use and maintenance during the applicable warranty period.

135.   These express warranties became part of the basis of the bargain between Defendant and Plaintiff and the Class, who reasonably relied on Defendant's representations that their water heaters—and the components contained within them—were free from defects and suitable for long-term residential use.

136.   Defendant breached its express warranties by failing to properly repair or replace the defective plastic drain valves or the water heaters in which they were installed. Instead of providing

31

non-defective components, Defendant repeatedly supplied consumers with replacement plastic drain valves that were equally defective or denied warranty coverage altogether.

137. The limitations contained within Defendant's express warranties are both substantively and procedurally unconscionable. Defendant's attempt to disclaim or limit its express warranty obligations is unconscionable and unenforceable because Defendant knowingly sold water heaters equipped with defective plastic drain valves without disclosing the defect to Plaintiff and the Class.

138. The time limits contained in Defendant's warranties are also unconscionable and inadequate to protect Plaintiff and the Class. Plaintiff and the Class had no meaningful choice regarding the warranty terms, which unreasonably favored Defendant. A gross disparity in bargaining power existed between Defendant and consumers, and Defendant knew or should have known that the plastic, glass-filled nylon drain valves were defective at the time of sale and would fail well before the heaters' expected useful lives.

139. Plaintiff provided written notice to Defendant of its breach of express warranties on or about January 16, 2026.

140. Plaintiff and the Class have complied with all obligations under the warranty, or otherwise have been excused from performance of said obligations as a result of Defendant's conduct described herein.

141. Plaintiff and the Class are entitled to legal and equitable relief against Defendant, including damages, consequential damages, specific performance, attorneys' fees, costs of suit, and other relief as appropriate.

## COUNT VI: VIOLATIONS OF THE MAGNUSON–MOSS WARRANTY ACT ("MMWA")
### (On Behalf of Plaintiff and each of the Classes)

142.     Plaintiff incorporates by reference each of the allegations contained in the foregoing paragraphs of this Complaint.

143.     Plaintiff and the Class are "consumers" as identified in 15 U.S.C. § 2301(3).

144.     Defendant is a "supplier" and "warrantor" as defined in 15 U.S.C. §§ 2301(4) and (5).

145.     Defendant's drain valves and/or water heaters are "consumer products" as defined in 15 U.S.C. § 2301(6). 15 U.S.C. § 2310(d)(1) provides a cause of action for any consumer who is damaged by the failure of a warrantor to comply with a written or implied warranty.

146.     15 U.S.C. § 2304(a)(1) requires Defendant, as a warrantor, to remedy any defect, malfunction or nonconformance of the drain valves and/or water heaters within a reasonable time and without charge to the Plaintiff and the Class.

147.     As described herein, Defendant's drain valves violated Defendant's warranties because they were not fit to be used as drain valves due to their frequent and premature failure.

148.     Plaintiff provided written notice to Defendant of its breach of the MMWA on or about January 16, 2026.

149.     As a result of Defendant's breaches of warranties, and Defendant's failures to remedy the same within a reasonable time and without charge to Plaintiff and the Class, Plaintiff and the Class have suffered damages.

33

## COUNT VII: UNJUST ENRICHMENT
### (On Behalf of Plaintiff and each of the Classes)

150. Plaintiff incorporates by reference each of the allegations contained in the foregoing paragraphs of this Complaint.

151. This claim is brought in the alternative to Plaintiff's contract-based claims.

152. As described herein, Defendant manufactured and sold residential water heaters equipped with plastic, glass-filled nylon drain valves that were not capable of performing the basic, essential function of a drain valve: to maintain a watertight seal under normal operating conditions and to permit safe, controlled drainage of the tank during routine maintenance.

153. Defendant generated substantial profits by selling water heaters containing defective plastic drain valves to Plaintiff and the Class. Defendant knew, or should have known, that these valves were prone to premature degradation, leaking, and failure, and that the failure of the drain valve could result in water damage, flooding, and loss of use. Despite this knowledge, Defendant did not disclose the defect to consumers and continued to market its water heaters as durable, reliable, and equipped with high-quality components.

154. Defendant, therefore, has been knowingly and unjustly enriched at the expense of and to the detriment of Plaintiff and the Class by collecting revenues for water heaters that were worth significantly less than represented and that contained a defect that rendered them unfit for their ordinary and intended purpose.

155. Defendant has unjustly retained these ill-gotten gains and should be required to disgorge this unjust enrichment.

34

156. Plaintiff incorporates by reference each of the allegations contained in the foregoing paragraphs of this Complaint.

157. Plaintiff brings this claim on behalf of himself and the Nationwide Class. *Cf. State v. Talyansky*, 2023 WI App 42, ¶¶ 36–37, 409 Wis. 2d 57, 995 N.W.2d 277, *review denied sub nom. State v. Engine & Transmission World, LLC*, 2024 WI 12, 6 N.W.3d 883 (noting that applying Wis. Stat. § 100.18 to out-of-state consumers posed no constitutional problem when the advertisements were made by in-state defendants who were already subject to Wisconsin's False Advertising Statute).

158. Section 100.18 of the Wisconsin Statutes ("Section 100.18") prohibits a company from making false, deceptive, or misleading advertisements to the public, with the intent to sell or distribute the company's products. The statute states in pertinent part that:

> [N]o person, firm, corporation or association, . . . with intent to sell, distribute, increase the consumption of or in any wise dispose of any . . . merchandise . . . or anything offered by such person, firm, corporation or association, . . . directly or indirectly, to the public for sale, hire, use or other distribution, or with intent to induce the public in any manner to enter into any contract or obligation relating to the purchase, sale, hire, use or lease of any . . . merchandise, . . . shall make, publish, disseminate, circulate, or place before the public, or cause, directly or indirectly, to be made, published, disseminated, circulated, or placed before the public, in this state, . . . an advertisement, announcement, statement or representation of any kind to the public relating to such purchase, sale, hire, use or lease of such . . . merchandise, . . . or to the terms or conditions thereof, which . . . contains any assertion, representation or statement of fact which is untrue, deceptive or misleading.

Wis. Stat. § 100.18(1).

159. In promoting the Water Heaters to the public, Defendant engaged in a multi-faceted advertising campaign, providing virtually identical information—through its website, on the water heaters themselves, and in other marketing materials, amongst others—to the Plaintiff and to

consumers nationwide, including members of the Class, through which Defendant touted that its water heaters were properly designed, usable as water heaters without failing, and non-defective.

160. On information and belief, Defendant, in the state of Wisconsin, directly and through its agents and servants in Wisconsin, including its dealers and authorized sales representatives, made, published, disseminated, circulated and placed those advertising and marketing materials and representations before the public and also caused those advertising and marketing materials to be made, published, disseminated, circulated, and placed before the public.

161. Defendant's consumer-facing website is viewable with a click of a button to any prospective purchaser; consumers who are then directed by Defendant to a specific authorized dealer to buy the water heater of their choice.

162. As detailed above, pursuant to this marketing campaign, prospective consumers are led to believe that Defendant's water heaters are of acceptable quality, usable as water heaters without failing, and non-defective.

163. On information and belief, however, notwithstanding these representations, Defendant's inclusion of a plastic drain valve rendered the water heaters defective.

164. When these facts are juxtaposed against Defendant's advertisements, Defendant's advertising and marketing materials and representations are false and misleading.

165. What is more, on information and belief, Defendant had actual and/or constructive knowledge about the insufficiency of the plastic drain valves and decided to include them with the water heaters anyway.

166.   Accordingly, the Plaintiff and members of the Class have been exposed to Defendant's ongoing, deceptive advertising campaign and thus suffered pecuniary damage and monetary loss redressable under Section 100.18.

167.   Neither the Plaintiff nor other members of the Class would have consummated the sale of a water heater had Defendant explained the truth; specifically, that the water heaters contained a Defect that subjected these consumers to an ever-present risk of catastrophic failure and uncontrollable water leaks.

168.   As such, Defendant conspired to violate Section 100.18 by disseminating to the public—including the Plaintiff and members of the Class—false, deceptive, and misleading advertising materials about the water heaters.

169.   Accordingly, the Plaintiff and the Class—as members of the public to whom these false, deceptive, and misleading advertisements were directed from Wisconsin—have suffered pecuniary monetary damages that are recoverable under Section 100.18(1) in an amount to be determined at trial.

**WHEREFORE**, Plaintiff, on behalf of himself and the Class, respectfully requests that this Court:

(A)   Determine that the claims alleged herein may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, and issue an order certifying the Class as defined above;

(B)   Appoint Plaintiff as the representative of the Class and his counsel as Class Counsel;

(C)   Award actual damages and equitable monetary relief to Plaintiff and the Class;

(D)   Award pre-judgment and post-judgment interest on such monetary relief;

(E)   Grant appropriate injunctive and/or declaratory relief;

(F)   Award reasonable attorneys' fees and costs; and

(G)   Grant such further relief that this Court deems appropriate.

*PLAINTIFF DEMANDS A JURY TRIAL ON ALL ISSUES SO TRIABLE*

37

Dated this 16th day of March, 2026.

**BARTON CERJAK S.C.**

*/s/ James B. Barton*
James B. Barton
Email: *jbb@bartoncerjak.com*
Michael J. Cerjak
Email: *mjc@bartoncerjak.com*
313 North Plankinton Ave., Ste. 207
Milwaukee, WI 53203
T: (414) 877–0690
F: (414) 877–3039

**SAUDER SCHELKOPF LLC**
Matthew D. Schelkopf (*admission forthcoming*)
Email: *mds@sstriallawyers.com*
Joseph B. Kenney (*admission forthcoming*)
Email: *jbk@sstriallawyers.com*
1109 Lancaster Avenue
Berwyn, PA 19312
T: (610) 200–0581
F: (610) 421–1326

*Attorneys for Plaintiff and the Proposed Classes*