UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

**VINCENT YEUNG,**

**Plaintiff,**

**v.** **Case No. 26-CV-422**

**A.O. SMITH CORPORATION,**

**Defendant.**

---

## DECISION AND ORDER

---

### 1. Background

Vincent Yeung filed this individual and putative class action against A.O. Smith Corporation. (ECF No. 1.) Now pending before the court is the defendant's motion to dismiss Yeung's first amended complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).[1] (ECF No. 23.)

Both parties have consented to the full jurisdiction of this court pursuant to 28 U.S.C. § 636(c). (ECF Nos. 5, 9.) The motion is fully briefed and ready for resolution.

---

[1] A.O. Smith also filed a motion to dismiss Yeung's original complaint (ECF No. 15), but the court will dismiss that prior motion as moot. *See Trading Techs. Int'l, Inc. v. BGC Partners, Inc.*, No. 10-C-715, 2010 WL 3272842, at *1, 2010 U.S. Dist. LEXIS 84138, at *3 (N.D. Ill. Aug. 17, 2010) ("Courts routinely deny motions to dismiss as moot after an amended complaint is filed, unless a defendant wishes to apply that same motion to the amended complaint because the amended complaint has not remedied the previous deficiencies.").

## 2. Facts

At the motion to dismiss stage the court accepts all well-pled facts as true and so summarizes the following facts from the plaintiff's operative, first amended complaint.

Yeung is a California resident who purchased a water heater in January 2020 "for personal and household use." (ECF No. 22, ¶ 12.) A.O. Smith is a Delaware corporation with a principal place of business in Wisconsin. (*Id.*, ¶ 24.) It manufactures water heaters for retail and wholesale distribution across North America. (*Id.*, ¶ 25.)

Yeung reviewed A.O. Smith's website for the specific water heater unit prior to his purchase.[2] (ECF No. 22, ¶ 14.) He conducted the routine maintenance recommended by A.O. Smith. (*Id.*, ¶ 15.) In July 2023 the plastic drain valve on the water heater leaked and caused substantial water damage to the surrounding floor, cabinetry, and drywall in Yeung's home. (*Id.*, ¶ 16.)

Yeung contacted A.O. Smith about the leak, and it sent him a replacement plastic drain valve. (ECF No. 22, ¶ 17.) In early 2025 the replacement plastic drain valve and the tank of the water heater leaked. (*Id.*, ¶ 18.) After Yeung contacted A.O. Smith again, it agreed to send him a new water heater if he paid the difference between the original purchase price and the then-current price of a replacement water heater. (*Id.*) Yeung paid the difference and received a replacement water heater, although A.O. Smith did not provide a warranty on it. (*Id.*)

[2] The first amended complaint does not specify from whom Yeung purchased the water heater.

As a result of both leaks combined, Yeung incurred approximately $5,000 in out–of–pocket costs for the materials necessary to replace the water damaged items in his home, including flooring and drywall. (ECF No. 22, ¶ 19.) He performed the necessary repairs and replacements himself. (*Id.*)

Yeung brought this lawsuit alleging that the water heaters are defective because A.O. Smith made a "decision to manufacture and install drain valves made of inexpensive glass–filled nylon [which the parties refer to as plastic] instead of brass." (ECF No. 22, ¶ 55.) He claims that "the root cause of the defect is A.O. Smith's use of plastic drain valves that are materially unfit for their intended purpose" because "[t]he foreseeable degradation and deformation of glass–filled nylon under normal water–heater conditions renders the valve incapable of performing its essential safety and maintenance function." (*Id.*, ¶ 56.) Yeung claims that he "would not have purchased the water heater, or would have paid less for it," had A.O. Smith, or any of its agents, dealers, or other representatives informed him of the existence of the defect prior to purchase. (*Id.*, ¶ 23.)

Yeung brings the eight claims in this lawsuit individually and on behalf of similarly situated consumers. (ECF No. 22, ¶¶ 85–91.) He intends to represent a nationwide class of "persons in the United States who purchased a residential tank–style water heater manufactured or sold by A.O. Smith, including those branded as State or

Reliance, that contained a plastic drain valve." (*Id.*, ¶ 85.) In alternative to the nationwide class, Yeung purports to represent a class limited to California consumers. (*Id.*, ¶ 86.)

**3. Legal Standard**

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face[.]'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim "has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. A claim satisfies this pleading standard when its factual allegations "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555–56. The court accepts "all well-pleaded facts as true and constru[es] all inferences in favor of the plaintiff[]." *Gruber v. Creditors' Prot. Serv.*, 742 F.3d 271, 274 (7th Cir. 2014).

Federal Rule of Civil Procedure 9(b) imposes a heightened pleading standard for claims that allege fraud, which requires a party to state with "particularity" the circumstances constituting fraud. "This ordinarily requires describing the 'who, what, when, where, and how' of the fraud, although the exact level of particularity that is required will necessarily differ based on the facts of the case." *AnchorBank, FSB v. Hofer*, 649 F.3d 610, 615 (7th Cir. 2011).

## 4. Analysis

### 4.1. CLRA and UCL Claims (Counts I and II)

A.O. Smith argues that Yeung fails to state a claim under both the California Consumer Legal Remedies Act ("CLRA") and the California Unfair Competition Law ("UCL") because he does not adequately plead that A.O. Smith had pre-sale knowledge of the defect. (ECF No. 24 at 11–13.[3]) It contends that his allegations are too conclusory and that Rule 9(b) demands more particularized facts. (*Id.* at 11.)

Yeung responds that Rule 9(b) does not apply to allegations of a defendant's knowledge or state of mind. (ECF No. 25 at 9–10.) "For fraud-based claims, heightened pleading does not apply to allegations regarding a defendant's knowledge or state of mind." *Goldstein v. Gen. Motors LLC*, 517 F. Supp. 3d 1076, 1088 (S.D. Cal. 2021) (citing Fed. R. Civ. P. 9(b) ("Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally."); *Odom v. Microsoft Corp.*, 486 F.3d 541, 554 (9th Cir. 2007) (holding that, where a plaintiff must make "a showing of the defendants' state of mind, general rather than particularized allegations are sufficient")).

Yeung further responds that he has sufficiently alleged A.O. Smith had pre-sale knowledge of the defect by way of complaints it received, testing and field data, replacement rates, and a previous lawsuit. (ECF No. 25 at 9–13.)

[3] Citations in this decision are to the page numbers provided by ECF, not the page numbers listed at the bottom of the parties' filings.

A.O. Smith replies that Yeung's allegations remain too vague and speculative to plausibly infer pre-sale knowledge and therefore fail to state a claim under both the CLRA and UCL. (ECF No. 28 at 4–6.)

Claims under the CLRA and UCL both require that a plaintiff "sufficiently allege that a defendant was aware of a defect at the time of sale to survive a motion to dismiss." *Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136, 1147–48 (9th Cir. 2012).

Beginning with the alleged complaints, Yeung states in the first amended complaint that, "beginning as early as 2018," A.O. Smith "received—and continues to receive—numerous complaints from consumers, plumbers, and service technicians reporting that these plastic drain valves leak, cannot be fully closed after being opened, or spontaneously fail, causing flooding and property damage." (ECF No. 22, ¶ 67.) Yeung alleges that the complaints were made directly to A.O. Smith, that only A.O. Smith would have access to the complaints, and that, "[o]n information and belief, the complaints were so numerous that it put [A.O. Smith] on notice that the plastic drain valves were defective." (ECF No. 22, ¶ 68.)

In *Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136, 1147–48 (9th Cir. 2012), although the plaintiffs submitted fourteen customer complaints as the basis for their allegation of the defendant's knowledge, the operative complaint did not indicate where or how the complaints were made, twelve of the complaints were undated, and the two remaining complaints were dated after the plaintiffs purchased the products. The Ninth Circuit

Court of Appeals upheld the district court's determination that the plaintiffs failed to sufficiently allege that the defendant was aware of the alleged defect at the time of sale. *Wilson*, 668 F.3d at 1147–48.

In *Goldstein v. General Motors LLC*, 517 F. Supp. 3d 1076, 1090 (S.D. Cal. 2021), the plaintiffs alleged that complaints were filed with the National Highway Traffic Safety Administration ("NHTSA"), "Cadillac Customer Care" representatives, and on the Cadillac Owner/Enthusiast Website and Forum. But because the complaints post-dated the plaintiffs' purchases, the district court held that the plaintiffs failed to make an adequate showing of pre-sale knowledge. *Goldstein*, 517 F. Supp. 3d at 1090. The court also observed that the defendant's issuance of technical service bulletins concerning issues consistent with the alleged defect could support an inference of the defendant's knowledge, but the bulletins in *Goldstein* were issued after the plaintiffs' purchases and could not create an inference of pre-sale knowledge. *Id.* at 1089.

Although a plaintiff is not required to have personal knowledge of all facts alleged in his complaint, the factual allegations must go beyond mere speculation. *See Twombly*, 550 U.S. at 555 (allegations in the complaint must give the defendant "fair notice" of what the claim is and the grounds upon which it rests). The fact that Yeung himself experienced a product failure is not a plausible basis to believe that A.O. Smith received complaints so "numerous" to put it on notice of a defect prior to Yeung's purchase. In fact, "[s]ome courts have expressed doubt that customer complaints in and of themselves adequately

support an inference that a manufacturer was aware of a defect, noting that complaints posted on a manufacturer's webpage 'merely establish the fact that some consumers were complaining.'" *Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136, 1147 (9th Cir. 2012). Yeung offers no indication that the allegation that A.O. Smith began receiving complaints in 2018 is anything more than pure speculation. In the first amended complaint he provides excerpts of third-party blog posts, but all four examples post-date his purchase by at least two years. (ECF No. 22, ¶ 81.) The court concludes that his allegation of "numerous" complaints beginning in 2018 is too vague and speculative to support the pleading requirements related to pre-sale knowledge under California law.

Yeung also alleges in his first amended complaint that A.O. Smith knew the plastic drain valves were defective before it started selling them because, "in pre-sale testing, those valves were failing at rates far exceeding what is expected in the water–heater industry and far above the failure rates associated with brass drain valves." (ECF No. 22, ¶ 64.) Yeung contends that only A.O. Smith has access to the pre-sale testing data. (ECF No. 22, ¶ 66.)

Yeung argues in his response brief that A.O. Smith's "self-described rigorous quality and endurance testing" included "exposing the plastic drain valves to long-term heat, pressure, and chlorinated hot water, as well as testing performance under routine maintenance procedures like flushing." (ECF No. 25 at 12 (citing ECF No. 22, ¶ 66).) But he does not explain in briefing or in the first amended complaint when, where, or how

A.O. Smith "self-described" its pre-sale testing. Yeung also argues that the fact that A.O. Smith uses brass drain valves on its contractor-only line of water heaters is further evidence that it knew of the plastic drain valve's defective nature. (ECF No. 25 at 12 (citing ECF No. 22, ¶¶ 72–73).)

"[T]o successfully allege a manufacturer was aware of a defect, a plaintiff is typically required to allege *how* the defendant obtained knowledge of the specific defect *prior* [to] the plaintiff's purchase of the defective product." *Stewart v. Electrolux Home Prods., Inc.*, 304 F. Supp. 3d 894, 908 (E.D. Cal. 2018) (discussing the "degree of specificity" required to "allege a defendant's actual knowledge of a product defect" in fraud-based claims under the CLRA and UCL). "[I]n cases where plaintiffs provided only conclusory allegations that the defendant manufacturer had access to information about the defect or was in a 'superior position to know the truth about the [product],' the claims were deemed deficient." *Id.* (citing *Wilson*, 668 F.3d at 1147).

Yeung apparently means for the court to infer that A.O. Smith must have conducted pre-sale testing that revealed the plastic drain valves would fail under normal operating conditions because Yeung experienced a product failure and because A.O. Smith employs a valve made of different (brass) material in a similar product line marketed to an audience with more sophisticated industry knowledge. But these allegations are too speculative to satisfy the pleading standards under the CLRA and UCL. Yeung's experience with the product reveals nothing about representative testing.

And a different product line choice does not necessarily imply that one product fails to meet appropriate testing or industry standards. Accordingly, Yeung's allegation of exclusively held pre-sale testing data is too speculative to support an inference of pre-sale knowledge under the CLRA and UCL.

Yeung also alleges that A.O. Smith knew of the defect "at least as early as 2018 … because it was replacing the defective valves at an unusually high rate." (ECF No. 22, ¶ 69.) He claims that only A.O. Smith has access to the aggregate data about the failure rate of its plastic drain valves. (*Id.*) But, like the alleged testing data, Yeung's allegation about replacement rates is too speculative and conclusory to allege pre-sale knowledge of a defect under the CLRA and UCL.

Finally, Yeung alleges that A.O. Smith knew about the defect because it faced a lawsuit in the Southern District of Texas in 2015 in which it was alleged that "[p]lastic is an ill-suited material for [A.O. Smith's] drain valves." (ECF No. 22, ¶ 74 (citing *Rosa v. Am. Water Heater Co.*, No. 4:15-cv-01898, ECF No. 14, ¶ 20 (S.D. Tex. Oct. 2, 2015)).) But Yeung offers nothing to connect that action to the valves at issue here, and a single unproven allegation does not create a plausible inference that A.O. Smith knew its plastic drain valves were defective prior to Yeung's purchase.

Even viewing the facts in the light most favorable to Yeung, he has failed to allege that A.O. Smith had pre-sale knowledge of a defect with the plastic drain valves under California law. *See Stewart v. Electrolux Home Prods., Inc.*, 304 F. Supp. 3d 894, 908 (E.D.

Cal. 2018). Because he cannot state a claim under the CLRA or UCL without adequately alleging pre-sale knowledge, the court will grant A.O. Smith's motion to dismiss in their entirety Yeung's claims under the CLRA and UCL.[4]

**4.2. Fraudulent Concealment (Count III)**

A.O. Smith argues that Yeung's claim for fraudulent concealment fails because: (1) it is barred by the economic loss doctrine; (2) he has not alleged "active" concealment; and (3) he fails to plead fraud with the particularity required by Rule 9(b). (ECF No. 24 at 17–21.)

Yeung responds that he assumes A.O. Smith is not seeking dismissal of his fraudulent concealment claim as to the putative California class because it advances arguments only as to Wisconsin law. (ECF No. 25 at 20 n.3.) A.O. Smith does not dispute this distinction in its reply brief (*see generally* ECF No. 28), so the court will focus only on Wisconsin law with respect to this claim.

**4.2.1. Economic Loss Doctrine**

A.O. Smith argues that Yeung is precluded from pursuing a claim for fraudulent concealment because the economic loss doctrine bars tort remedies for purely economic losses. (ECF No. 24 at 18–20.) Yeung responds that the "other property" exception to the

[4] Because the court is dismissing these claims, it will not address A.O. Smith's arguments that Yeung fails to state a claim under the CLRA and UCL because he is barred by the statute of limitations, fails to satisfy the heightened pleading standards, cannot pursue equitable relief, and fails to allege conduct that violates the UCL.

economic loss doctrine applies here. (ECF No. 25 at 19–23.) A.O. Smith replies that Yeung cannot invoke the "other property" exception because the alleged damage to flooring and drywall fails the "disappointed expectations" prong of the "other property" exception. (ECF No. 28 at 10–11.)

In Wisconsin, "the economic loss doctrine precludes recovery in tort for economic losses resulting from the failure of a product to live up to a contracting party's expectations." *Tietsworth v. Harley-Davidson, Inc.*, 677 N.W.2d 233, 241 (Wis. 2004). The doctrine has been extended to consumer transactions and is "based on an understanding that contract law and the law of warranty, in particular, is better suited than tort law for dealing with purely economic loss in the commercial arena." *Id.* at 163–68 (finding that the "plaintiffs may have contract remedies—breach of contract/warranty or rescission and restitution—but may not pursue a tort claim for misrepresentation premised on having purchased allegedly defective motorcycles").

"When a defect in the product causes personal injury or damage to 'other property,' however, tort theories may permit recovery for economic losses." *State Farm Fire & Cas. Co. v. Hague Quality Water, Int'l*, 826 N.W.2d 412, 415 (Wis. Ct. App. 2013). To determine whether the "other property" exception applies, Wisconsin courts apply a two-part test. *Hinrichs v. DOW Chem. Co.*, 937 N.W.2d 37, 48–49 (Wis. 2020). First, the court determines whether the defective product and the damaged property are part of an "integrated system." If the pair do form an integrated system, then "the entire product or

system ceases to be 'other property' for purposes of the economic loss doctrine." *Id.* (citation omitted). If they are not part of an integrated system, the court proceeds to the second part of the test: the "disappointed expectations" test. *Id.* Focusing on the product's expected function, the "disappointed expectations" test asks "whether the purchaser should have foreseen that the product could cause the damage at issue." *Id.* (citation omitted). "When claimed damages are merely the result of disappointed expectations of a product's performance, the exception will not apply and the economic loss doctrine will bar recovery in tort." *Id.*

A.O. Smith does not dispute that Yeung satisfies the "integrated system" step of the two-part test because the damaged flooring, cabinetry, and drywall are not part of an integrated system with the defective water heater. (ECF No. 28 at 10–11.) But A.O. Smith argues that Yeung fails the "disappointed expectations" test because "a reasonable consumer would expect that a failed drain valve would cause water damage to surrounding property." (*Id.* at 11.)

Yeung points to *State Farm Fire & Cas. Co. v. Hague Quality Water, Int'l*, 826 N.W.2d 412, 417 (Wis. Ct. App.), where the Wisconsin Court of Appeals found that drywall, flooring, and woodwork damaged by leakage from a defective water softener passed the "disappointed expectations" test and constituted "other property" precluding application of the economic loss doctrine. (ECF No. 25 at 21–22.) In *State Farm*, the court held that "[t]ort recovery [was] not precluded … as the water softener was not expected,

nor intended, to interact with the drywall, flooring, and woodwork of [the plaintiff's] home," and the cause of damage "did not stem from a disappointment in how [the plaintiff and defendant] expected the water softener to function in softening [the plaintiff's] water." 826 N.W.2d at 752.

A.O. Smith argues that the *State Farm* decision "relies on a too-narrow standard of foreseeability" and that disappointed expectations should extend beyond whether a water heater heats water and include other foreseeable failures, such as leaks. (ECF No. 28 at 11.) It cites a decision by the Wisconsin Court of Appeals concluding that a reasonable purchaser would expect a failed roof to "cause damage to the store's inventory and fixtures." (*Id.* (quoting *Kmart Corp. v. Herzog Roofing, Inc.*, No. 2017AP1041, 2018 WL 5740702, at *4, 2018 Wisc. App. LEXIS 842, at *10–11 (Wis. Ct. App. Oct. 30, 2018).)

But water damage resulting from a failed roof is obviously foreseeable when considering that a roof's core expected function is to protect the area below from outdoor elements. As one district court has observed, "there would appear to be a line between damages resulting from a product which performs its core function badly and damages resulting from a product defective in some other way than failure to perform its intended function or use." *Hackel v. Nat'l Feeds, Inc.*, 986 F. Supp. 2d 963, 976 (W.D. Wis. 2013).

Yeung's case is akin to *State Farm* because his damages did not arise from a problem with the defective product's intended function (to heat water) just as the damage in *State Farm* did not arise from any problem with the defective water softener's intended

function (to soften water). A.O. Smith has not pointed the court to any authority casting doubt on this correlation. Even if it did, the pleading stage is not the time for further factual inquiry. *Foremost Farms USA Co-op. v. Performance Process, Inc.*, 726 N.W.2d 289, 297 (Wis. Ct. App. 2006) (observing that "resolving cases in the middle of the spectrum [on the 'disappointed expectations' test] will require a factual inquiry into what a reasonable purchaser in the plaintiff's position would have foreseen.").

Yeung alleges that a defect with his water heater caused damage to property that was not integrated with the water heater and that a reasonable consumer would not expect to be impacted by a water heater's intended functioning. Therefore, the "other property" exception prevents the doctrine of economic loss from barring tort recovery. Accordingly, the court will deny A.O. Smith's motion to dismiss the fraudulent concealment claim on this basis.

**4.2.2. Active Concealment**

A.O. Smith argues that Yeung's fraudulent concealment claim fails because he has not identified any "active" concealment. (ECF No. 24 at 20–21.) It claims that Yeung must allege that it took "steps to actively hide the drain valve's alleged deficiencies" because "[a] plaintiff must allege that the defendant actively hid information or prevented it from becoming known." (*Id.* at 20 (citing *Osowski v. Howard*, No. 2010AP2260, 2011 WL 4916924, at *7 (Wis. Ct. App. Oct. 18, 2011)).)

But A.O. Smith relies on caselaw interpreting statutory exceptions involving fraud or concealment rather than a standalone claim for fraudulent concealment. (ECF No. 24 at 20 (citing *Osowski*, 2011 WL 4916924, at *7 (discussing Wis. Stat. § 893.66(4), which reads: "This section does not apply to any person who commits fraud or concealment in the performance of professional accounting services.")); (citing *Halverson v. Tydrich*, 456 N.W.2d 852, 854 (Wis. Ct. App. 1990) (discussing the tolling of the statute of limitations under Wis. Stat. § 893.55(2) when "a health care provider conceals from a patient a prior act or omission")).)

A.O. Smith reiterates in its reply brief that Yeung must allege it "took extra steps to hide the existence of an alleged defect" beyond alleging that it made "an affirmative misrepresentation or an omission when a duty to disclose exists." (ECF No. 28 at 10.) It again relies on case law interpreting a statutory exception involving concealment. (*See id.* (citing *Fiene v. V & J Foods, Inc.*, 962 F. Supp. 1172, 1183 (E.D. Wis. 1997) (addressing the "fraud or concealment" exception in 29 U.S.C. § 1113)).)

A.O. Smith has not identified where an obligation to plead "active" concealment arises among the elements of a claim for fraudulent concealment. (*See* ECF Nos. 24 at 20–21, 28 at 10.) "Under Wisconsin law, to prove a claim for fraudulent concealment, a plaintiff must establish: (1) defendant's failure to disclose a material fact; (2) defendant's intent to defraud; and (3) plaintiff's reliance on defendant's disclosures." *Karnes v. C. R. Bard, Inc.*, No. 18-CV-931-WMC, 2019 WL 1639807, at *6, 2019 U.S. Dist. LEXIS 65115, at

*16 (W.D. Wis. Apr. 16, 2019) (citing *Staudt v. Artifex Ltd.*, 16 F. Supp. 2d 1023, 1031 (E.D. Wis. 1998)).

The court infers that A.O. Smith's emphasis on "active" concealment may be an attempt to reference the element of intent to defraud. But it has not pointed to any relevant authority requiring that the steps a defendant took to act with intent be spelled out with particularity in the pleadings. *See* Wis. Stat. § 802.03(2) ("In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity. Malice, intent, knowledge, and other condition of mind of a person may be averred generally."); Fed. R. Civ. P. 9(b) (same).

A.O. Smith attempts to advance a separate argument that Yeung's fraudulent concealment claim must be dismissed for failure to plead fraud with particularity. (ECF No. 24 at 21–22.) It claims that Yeung's allegations are inadequate as to its knowledge and the "how" of the alleged concealment. (*See id.* at 21.) It contends that Yeung "offer[s] nothing more than a conclusory assertion that testing and field data 'revealed or should have revealed' the inadequacy of the plastic valves" and "does not identify any specific statement, communication, or affirmative act through which A.O. Smith actively concealed the drain valve's alleged deficiencies from [Yeung] before he purchased the water heater." (*Id.*)

Yeung responds that he pleads fraud with the requisite particularity because Rule 9(b)'s heightened pleading standard does not apply to allegations of knowledge or

state of mind. (ECF No. 25 at 25.) A.O. Smith does not address its argument for particularity on the fraudulent concealment claim in its reply brief. (ECF No. 28 at 10–11.)

The court finds that A.O. Smith's particularity argument is merely a repackaging of its "active" concealment argument. These arguments fail because A.O. Smith has not identified any obligation to plead knowledge or intent with particularity under Wisconsin law.

Accordingly, the court will deny A.O. Smith's motion to dismiss the fraudulent concealment claim on the bases of failure to plead "active" concealment or with particularity.[5]

**4.3. Breach of Implied Warranty (Count IV)**

A.O. Smith argues that Yeung's claim for breach of the implied warranty of merchantability (brought on behalf of Yeung and the putative California class) is time-barred and should be dismissed. (ECF No. 24 at 7–9.)

Under California law, the limitations period in which a plaintiff must bring a suit or be barred "runs from the moment a claim accrues." *Aryeh v. Canon Bus. Sols., Inc.*, 55 Cal. 4th 1185, 1191, (2013). "Generally speaking, a cause of action accrues at 'the time when the cause of action is complete with all of its elements.'" *Fox v. Ethicon Endo-Surgery, Inc.*, 35 Cal. 4th 797, 806–07 (2005). The relevant statute of limitation allows four years for

[5] Although this result may appear on its face to contradict the court's decision to grant A.O. Smith's motion to dismiss Yeung's claims under the CLRA and UCL for failure to adequately plead pre-sale knowledge, those claims hinged on California authority requiring more specific pleadings.

implied warranty claims. *See* Cal. Com. Code § 2725(1). "An important exception to the general rule of accrual is the 'discovery rule,' which postpones accrual of a cause of action until the plaintiff discovers, or has reason to discover, the cause of action." *Fox*, 35 Cal. 4th at 806–07.

A.O. Smith argues that Yeung's claim for breach of the implied warranty of merchantability is time-barred on its face because he purchased his allegedly defective water heater in January 2020 and did not file suit until more than six years later—in March 2026. (ECF No. 24 at 7–8.)

Yeung responds that he did not discover the defect until July 2023 when the plastic drain valve leaked and caused substantial property damage, so the delayed discovery rule should toll the limitations period and render the claim timely. (ECF No. 25 at 5–6.) He alleges that he "could not have discovered the defect earlier because 'the plastic drain valve is not detectable through ordinary consumer inspection because the valve is housed inside the water heater unit.'" (ECF No. 25 at 6 (quoting ECF No. 22, ¶ 14).)

A.O. Smith replies that the discovery rule does not apply to implied warranty claims. (ECF No. 28 at 2.) An implied warranty is breached under California law at the time of delivery "regardless of the aggrieved party's lack of knowledge of the breach." *Matray v. Ford Motor Co.*, No. CV 11-7767-GHK (CWX), 2011 WL 13221015, at *2 (C.D. Cal. Nov. 9, 2011); *see also* Cal. Com. Code § 2725 (providing that "[a] breach of warranty

occurs when tender of delivery is made" except in the case of warranties explicitly extended to future performance).

Because Yeung does not dispute that he filed suit more than four years after receiving his water heater, his claim for breach of the implied warranty is time-barred. The court will grant A.O. Smith's motion to dismiss Yeung's claim for breach of the implied warranty of merchantability.

**4.4. Express Warranty (Count V)**

A.O. Smith argues that Yeung does not state a claim for breach of express warranty for three reasons: (1) Yeung cannot establish breach of warranty because A.O. Smith complied with the warranty; (2) Yeung alleges only a design defect, which is not covered by the warranty; and (3) Yeung failed to plead reliance on the warranty. (ECF No. 24 at 24–26.)

Yeung does not dispute that design defects are excluded from express warranties covering defects in material and workmanship under California law. (ECF No. 25 at 28–29.) But he contends he is not required to commit to a theory of the defect's origin (manufacturing or design) on the pleadings prior to discovery. (*Id.* at 28.)

Even if Yeung may plead both a manufacturing and a design defect, he must plausibly state a manufacturing defect in order to state a claim for breach of an express warranty, given that the express warranty excludes design defects. *See Troup v. Toyota Motor Corp.*, 545 F. App'x 668 (9th Cir. 2013) ("In California, express warranties covering

defects in materials and workmanship exclude defects in design."). "[S]imply using the words 'manufacturing,' 'materials,' and 'workmanship' does not somehow transform the crux of [p]laintiffs' design defect theory" because "courts are not 'bound to accept as true a legal conclusion couched as a factual allegation.'" *Chiulli v. Am. Honda Motor Co.*, 690 F. Supp. 3d 1038, 1050–51 (N.D. Cal. 2023) (quoting *Iqbal*, 556 U.S. at 678).)

"A manufacturing defect exists when an item is produced in a substandard condition," which is "often demonstrated by showing the product performed differently from other ostensibly identical units of the same product line." *McCabe v. Am. Honda Motor Co.*, 123 Cal. Rptr. 2d 303 (Cal. Ct. App. 2002). "A design defect, in contrast, exists when the product is built in accordance with its intended specifications, but the design itself is inherently defective." *Id.*

Yeung pleads that the defect "arise[s] from A.O. Smith's decision to manufacture and install drain valves made of inexpensive glass–filled nylon instead of brass." (ECF No. 22, ¶ 55.) He does not contend that his drain valve, or those of any other potential class members, were defective due to a deviation from the manufacturer's intended result within the product line. *See Cabebe v. Nissan of N. Am., Inc.*, No. 18-CV-00144-WHO, 2018 WL 5617732, at *11, 2018 U.S. Dist. LEXIS 185017, at *34 (N.D. Cal. Oct. 26, 2018) ("Under California law, '[a] defect in the manufacture of a product exists if the product differs from the manufacturer's intended result or if the product differs from apparently

identical products from the same manufacturer.'") (quoting Cal. Jury Instr. (BAJI) No. 9.00.3).

Because Yeung contends that the defect stems from a product line choice by A.O. Smith, the allegations amount to a design defect theory. *See Chiulli v. Am. Honda Motor Co.*, 690 F. Supp. 3d 1038, 1051 (N.D. Cal. 2023) (observing that "whether a programming or calibration defect is part of the specifications or constitutes a deviation from the specifications is what distinguishes a design defect from a manufacturing defect").

Yeung also argues that the parties' course of conduct altered the terms of the express warranty to cover the alleged defect because it replaced the plastic drain valve twice when Yeung made warranty claims. (ECF No. 25 at 28–29.) He cites examples of cases in which the court held that providing warranty remedies "lends factual support to Plaintiff's allegations of a manufacturing defect." (ECF No. 25 at 29 (quoting *Victor Mallh v. Incase Designs Corp.*, No. CV-19-06414-DSF (SK), 2020 U.S. Dist. LEXIS 265999, at *12 (C.D. Cal. Mar. 11, 2020)); (further citing *Baba v. Hewlett Packard Co.*, No. C-09-5946-RS, 2012 U.S. Dist. LEXIS 154326, at *20 (N.D. Cal. Oct. 26, 2012) (holding that the parties' "course of dealing" established "that *both* parties interpreted the express warranty to cover" the alleged defect)).)

A closer reading reveals that, in addition to considering the parties' course of dealing, the courts in the cases cited by Yeung still determined that the alleged defect

could support a manufacturing theory of origin. In *Victor Mallh*, the court found that the plaintiff "plausibly alleged how the Laptop Cases with the defect deviated from Defendant's intended result and from other seemingly identical Laptop Cases without the defect." 2020 U.S. Dist. LEXIS 265999, at *10. In *Baba*, the court determined that, regardless of whether the flaw was characterized as one in workmanship or design, it fell under the express warranty covering hardware for the computer because the defect arose from a motherboard used in the computers built on or before May 30, 2008. 2012 U.S. Dist. LEXIS 154326, at *20.

Because Yeung plausibly pleads only a defect in design, he cannot state a claim for breach of the express warranty covering defects in materials and workmanship. Therefore, the court will not address A.O. Smith's remaining arguments in support of dismissing this claim. The court will grant A.O. Smith's motion to dismiss the express warranty claim in its entirety.

### 4.5. Magnuson-Moss Warranty Act (Count VI)

A.O. Smith argues that Yeung's claims under the Magnuson-Moss Warranty Act, brought individually and on behalf of both putative classes, fail to state a claim because they rely on the viability of an underlying state law warranty claim. (ECF No. 24 at 26–27.) Yeung does not dispute that this claim is dependent on his state law warranty claims. (ECF No. 25 at 31.)

Because the court has determined that Yeung's claims for breach of the implied warranty of merchantability and breach of express warranty should be dismissed, he cannot state a claim under the Magnuson-Moss Warranty Act. *See Zylstra v. DRV, LLC*, 8 F.4th 597, 609 (7th Cir. 2021) ("The MMWA depends on the existence of an underlying viable state-law warranty claim, and so the two claims can be evaluated together and succeed or fail together."). Accordingly, the court will grant A.O. Smith's motion to dismiss Yeung's claim under the Magnuson-Moss Warranty Act in its entirety.

**4.6. Unjust Enrichment Claim (Count VII)**

Yeung concedes that his claims for unjust enrichment "as to the Nationwide and Wisconsin classes only" should be dismissed. (ECF No. 25 at 2 n.1.) The first amended complaint does not identify a Wisconsin class. (*See* ECF No. 22, ¶¶ 85–86 (identifying putative nationwide and California classes).) And Yeung brought the claim for unjust enrichment on behalf of himself individually and each of the putative classes. (ECF No. 22, ¶¶ 161–66.)

A.O. Smith acknowledged in its reply brief that Yeung conceded his Wisconsin claim for unjust enrichment and did not provide any further argument on the claim. (ECF No. 28 at 1.) Therefore, the court will grant the defendant's motion to dismiss the unjust enrichment claim only as to the putative nationwide class.

### 4.7. Section 100.18 Claim (Count VIII)

Yeung concedes that his claims individually and on behalf of the putative nationwide class under Wisconsin Statute § 100.18 should be dismissed. (ECF No. 25 at 2 n.1.) Therefore, the court will grant the defendant's motion to dismiss these claims.

## 5. Conclusion

**IT IS THEREFORE ORDERED** that the defendant's motion to dismiss the first amended complaint (ECF No. 23) is **granted in part and denied in part**. The following claims are hereby dismissed in their entirety: violation of the California Consumer Legal Remedies Act ("CLRA"); violation of the California Unfair Competition Law ("UCL"); breach of the implied warranty of merchantability; breach of express warranty; violation of the Magnuson-Moss Warranty Act; and violation of Wisconsin Statute § 100.18. Yeung's claim for unjust enrichment is dismissed only as to the putative nationwide class.

**IT IS FURTHER ORDERED** that the defendant's motion to dismiss the original complaint (ECF No. 15) is **dismissed as moot**.

The Clerk of Court shall schedule a Rule 16 Scheduling Conference in this matter.

Dated at Milwaukee, Wisconsin this 23rd day of November, 2026.

WILLIAM E. DUFFIN
U.S. Magistrate Judge